**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Robert E. Blackburn**

Civil Action No. 13-cv-03292-REB

JAMES SIDNEY TRIGGS,

      Applicant,

v.

STATE OF COLORADO,
LARIMER COUNTY,
JOHN SUTHERS, the Attorney General of the State of Colorado, and
LOU ARCHULETA, Warden, Fremont Correctional Facility,

      Respondents.

---

## ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS

---

      This matter is before me on the *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") [# 1],[1] filed December 5, 2013, by Applicant James Sidney Triggs.  Respondents answered the Application [# 28], and Applicant filed a traverse [#29]. After reviewing the pertinent portions of the record in this case, including the Application, the Answer, the Traverse, and the state court record, I conclude that the Application should be denied.

### I.  BACKGROUND

      Applicant is serving an aggregate 100-year prison term in the Colorado Department of Corrections for his 2006 convictions of five counts of sexual assault on a child by one in a position of trust (SAC PAT), five counts of sexual assault on a child as part of a pattern of sexual abuse (SAC POT), and four counts of sexual exploitation of a child (SEC), in Larimer

---

[1]"[# 1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

County District Court Case No. 04CR1945.  (State Court R., Court File, jury verdicts, at 141-157; mittimus, at 315-318).

The Colorado Court of Appeals summarized the relevant facts on direct review of Applicant's convictions:

> In December 1994, the Larimer County Department of Human Services (LCDHS) began providing services to [Applicant's] family.  Six of [Applicant's] children were temporarily placed in foster case.  The family was reunited from December 20, 1994 until July 10, 1995, when LCDHS removed the children permanently.  Following removal, the children began to exhibit behavior consistent with sexual abuse, and LCDHS, law enforcement, therapists, and foster parent interviewed one or more of the children in 1996, 1999, 2001, and 2003.  As a result, in 2005, [Applicant] was charged with seventeen counts of sexual offenses involving six of his children.  The children all testified at trial; four testified about sex abuse of varying kinds by [Applicant].

*People v. Triggs* (*Triggs I*)*,* No. 06CA1060 (Colo. App. Dec. 24, 2009) (unpublished decision). [# 11-7, at 4-5].

The Colorado Court of Appeals affirmed Mr. Triggs' convictions and sentences in *Triggs I*. [# 11-7].  The Colorado Supreme Court denied Applicant's request for certiorari review on April 26, 2010.  [# 1, at 5].

Mr. Triggs filed a post-conviction motion for reduction of sentence that was denied by the state district court on September 28, 2010.  [*Id*.].  Applicant did not file an appeal.

On May 11, 2011 Mr. Triggs filed a motion for post-conviction relief pursuant to Colo. R. Civ. P. 35(c), which was denied by the state district court summarily on May 24, 2011.  [# 11-1, at 10].  The Colorado Court of Appeals affirmed the district court's order in *People v. Triggs* (*Triggs II*), 11CA1168 (Colo. App. Jan. 17, 2013) (unpublished).  [# 11-3].  The Colorado Supreme Court denied certiorari review on September 16, 2013. [# 1, at 31].

Mr. Triggs initiated this action on December 5, 2013.  I discern the following claims from the Application:

> (1) the prosecution failed to produce material exculpatory information, in violation of Applicant's due process rights by: (a) failing to disclose information that would impeach its experts, which the trial court purportedly ordered disclosed [# 1, at

2

33, 34]; and, (b) "suppressing" medical evidence that would have contradicted evidence that Applicant sexually penetrated two of his children, KT[2] and his eldest son (namely, the absence of physical signs of penetration).  [*Id.* at 43-44].

(2) the trial court erroneously excluded a statement by a doctor who examined KT that KT's hymen was still intact.  Applicant contends that the statement would have disputed evidence that he sexually penetrated his daughter KT and his eldest son repeatedly.  [*Id.* at 42, 43].

(3) Applicant was denied a useful bill of particulars.  [*Id.* at 42].

(4) Applicant's trial counsel was constitutionally ineffective by: (a) failing to "produce a claim of double jeopardy [*id.* at 40]; (b) failing to seek recusal of the trial judge for (i) judicial bias [*id.*] and (ii) failing to declare a mistrial based on improper comments made by the prosecution at the prosecution table or during bench conferences, and overheard by the jury [*id.* at 40, 50]; (c) failing to seek a mistrial when a juror notified the court and parties that the jury could hear a bench conference [*id.* at 40]; (d) failing to notify the appropriate authorities of the trial judge's alleged bias [*id.* at 41]; (e) failing to notify the appropriate authorities of the prosecutor's misconduct [*id.*]; (f) filing a Rule 35(b) motion that allegedly suggested that Applicant was willing to admit certain sexual assaults, when in fact, Applicant refused to admit crimes for which he was actually innocent [*id.*]; and, (g) failing to call "at least two crucial defense witnesses" [*id.*].

(5) The prosecutor engaged in misconduct by: (a) making improper "extra-judicial" comments at the prosecution table, which were overheard by the jury [*id.* at 42]; (b) making improper comments overheard by the jury during bench conferences [*id.* at 40, 50-52]; (c) violating several federal statutes [*id.* at 44-46]; and, during closing argument (i) expressing "community sentiment of sexual offenders in back yards of the community; (ii) expressing personal opinions about Applicant's character; and, (iii) misstating the trial evidence [*id.* at 50].

(6) The trial court erroneously denied a challenge for cause to juror R, in violation of Applicant's rights under the First, Fourth, Sixth, Eighth and Fourteenth Amendments, due process and ethical rules.  [*Id.* at 46-48, 51].

(7) The trial court violated Applicant's rights to due process and a fair trial by an impartial jury by permitting the jury to be exposed to "extraneous information"–namely, comments made during bench conferences–and failing to conduct a "post trial audit" or other investigation into jury exposure to extraneous information.  [*Id.* at 50-52].

---

[2]I refer to the child victims throughout this Order by the initials of their birth parents, as did the State of Colorado in the state court proceedings. (*See* ECF No. 11, at 3).  I note, however, that Applicant has identified the victims by the initials of their adoptive families, which are set forth in parentheses as follows:  JT (JL); DT (DT); AT (AF); KT (KD); DT2 (DL); JT2 (JG).

(8) The trial court failed to ensure, via the verdict forms or otherwise, that the verdicts were unanimous on the act supporting each conviction, in violation of due process.  [*Id.* at 49].

(9) The trial court committed cumulative error by failing to consider: (a) double jeopardy; (b) admission of "third party hearsay"; and, (c) the fact that improper child-interviewing techniques produced all of the damning (but false and unreliable) evidence against him from his children, in violation of due process. [*Id.* at 53-56].

(10) Applicant's double jeopardy rights were violated when he was punished once when his parental rights were revoked, and then again with criminal convictions and sentences.  [*Id.* at 57-59].

(11) Applicant is actually innocent of the crimes.  [*Id.* at 38-39; 53-59].

(12) The subsection of the sexual exploitation statute under which Applicant was convicted, COLO. REV. STAT. ("C.R.S.") § 18-6-403(3), is unconstitutionally vague.  [*Id.* at 35].

Respondents concede that the Application is timely pursuant to the AEDPA one-year limitation period, 28 U.S.C. § 2244(d)(1). [# 11, at 8-9].  Respondents further concede that Applicant exhausted state remedies for claims 1(a), 4(b)(i), 8, and 12. [*Id.* at 24-26, 43, 50-51]. Respondents argued in the pre-answer response, however, that the remainder of Applicant's claims, to the extent the claims present federal issues, are barred from federal habeas review based on the doctrines of procedural default and anticipatory procedural default.  [*Id.* at 26-50]. In a previous order, I dismissed the following claims as procedurally barred: sub-claim 1(b), a portion of claim 2 (relating to Applicant's eldest son), claims 3, 5, 6, 7, 9(b), 9(c), the assertion of cumulative error in claim 9, and claims 10 and 11.  [# 27, at 30].  I rejected Respondents' defense of failure to exhaust state court remedies with regard to the allegation in claim 2 relating to victim KT. [*Id.* at 13-14].  I further dismissed claim 9(a) as unduly vague.  [*Id.* at 30].  I deferred ruling on the applicability of a procedural bar to claims 4(a), 4(b)(ii) 4(c) through (g), pending receipt of the state court record and Respondents' argument in the Answer as to whether the allegations in those claims have substantial merit under *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309 (2012).  [*Id.* at 18].

I address claims 1(a), 2 (pertaining to KT), 4, 8 and 12 below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id.* at 784.  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.* at 784.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies

clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

The *Richter* presumption is also applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013).  For purposes of § 2254(d), when a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Id.* at 1094-96.  Federal habeas courts should not assume that any unaddressed federal claim simply was overlooked because a state court does not uniformly discuss separately every claim referenced by a defendant. *Id*.

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).  "[R]eview under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on

the merits."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent

will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at

786 (stating that "even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner
> must show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).  Section

2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state

court decision was based on an unreasonable determination of the facts in light of the evidence

presented to the state court.  Pursuant to § 2254(e)(1), the court must presume that the state

court's factual determinations are correct and the petitioner  bears the burden of rebutting the

presumption by clear and convincing evidence.  "The standard is demanding but not insatiable .

. . [because] '[d]eference does not by definition preclude relief.'"  *Miller–El v. Dretke*, 545 U.S.

231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**B. PRO SE LITIGANT**

Applicant is proceeding *pro se*.  I thus "review his pleadings and other papers liberally

and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v.

United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v.

Kerner*, 404 U.S. 519, 520–21 (1972). However, a pro se litigant's "conclusory allegations

without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Additionally, I may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Finally, an applicant's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III.  MERITS OF THE CLAIMS

### A.  Claim 1(a)

For his first claim, Applicant asserts that the prosecution suppressed material exculpatory information, in violation of his due process rights, by failing to disclose information that would impeach the State's experts [# 1, at 33-34].  Specifically, Applicant challenges the prosecution's failure to produce therapy notes from Matt Disbrow, who treated DT; Peter Strebe, who treated JT2; and, the notes taken by a therapist present during JT's March 1999 taped interview with investigators. [# 11-10, at 35-40].

At a pre-trial motions hearing, therapist Strebe, who treated JT2 at the Namqua Residential Treatment Center (RTC), testified to JT2's descriptions of sexual abuse.  (State Court R., 5/18/05 Hrg. Tr., at 533-44).   The defense requested production of all of Strebe's original notes.  (*Id.* at 561-62).  The prosecution responded that neither the prosecutors, nor Strebe, had access to Strebe's notes that were in the possession of Namqua, a private facility, where Strebe no longer worked.  (*Id.*).

At the same motions hearing, therapist Disbrow testified that he treated DT for approximately one year while working at the Chicago Creek RTC, where he was no longer employed.  (*Id.* at 518-19).  Disbrow obtained a release from DT's caseworker to testify at the motions hearing about DT's statements to him concerning sexual abuse.  (*Id.* at 272).  Prior to

testifying, Disbrow reviewed only his notes that the prosecution had given him, which were disclosed to the defense.  (*Id.* at 530).  Any additional notes were retained by Chicago Creek and were not accessible to him.  (*Id.*).  The defense requested discovery of "any specifics" from Disbrow's notes that had not already been produced.  (*Id.*).

At the conclusion of the hearing, the trial court ordered production of the notes relating to therapists' testimony to the extent the documents existed and were under the control of the prosecution.  (*Id.*, 10/19/05 Hrg. Tr., at 851).

In a subsequent hearing, the defense complained that it had not received any additional therapist notes and suggested that the notes might contain impeaching information discoverable under *Brady v. Maryland*, 373 U.S. 83 (1976).  (State Court R., 12/28/05 Hr. Tr., at 173-175). The trial court issued no further rulings before trial.

At trial, therapist Strebe testified that he had reviewed his original therapy notes regarding JT2 at Namqua RTC before trial.  (*Id.*, 2/2/06 Trial Tr., at 78, 84).  The defense requested production of the notes, or a mistrial.  (*Id.*, at 85-88, 92-93).  The prosecution responded that: Strebe was no longer employed at Namqua RTC at the time of the pre-trial motions hearing; Strebe was not able to obtain any of his notes from Namqua; and, the prosecution did not know how Strebe had managed to view his notes at Namqua.  (*Id.* at 89-92). The trial court ruled that the prosecution had satisfied the court's order to produce documents to which it had access because Namqua had chosen not to relinquish Strebe's notes.  (*Id.* at 93-94).

The jury also viewed a videotaped interview that JT gave to investigators in March 1999. (State Court R., 2/3/06 Trial Tr., at 245).  During the interview, the officers confronted JT with specific statements that he had made to two of his therapists.  (*Id.* at 247-48).  The defense argued that, as a result, there was "no confidentiality between the parties" and he was therefore

entitled to all the notes regarding JT's therapy from both therapists.  (*Id.* at 248).  The trial court did not enter a ruling.  (*Id.*).

Therapist Disbrow did not review any documents before trial other than what had already been produced to the defense.  Consequently, the defense did not raise any discovery-related objections to Disbrow's trial testimony.  (State Court R., 2/6/06 Trial Tr., at 202-26).

To establish a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963), a defendant must demonstrate: (1) the prosecution failed to disclose; (2) exculpatory or impeachment information; and, (3) a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.  *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995).  The due process right recognized in *Brady* does not arise unless the favorable but suppressed evidence was in the possession or control of the government.  *See United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009) (citing *United States v. Gardner*, 244 F.3d 784, 788 (10th Cir. 2001); *see also United States v. Norris*, 537 F.3d 840, 846-47 (8th Cir. 2008) (state courts reasonably applied *Brady* in rejecting access to child-witness's psychotherapy records because defendant failed to show that the prosecution had access to them).  Further, *Brady* is not implicated where the information is equally available to both the defendant and the prosecution.  *See, e.g., Pondexter v. Quarterman*, 537 F.3d 511, 526 (5th Cir. 2008) (*Brady* does not apply to evidence that is available through the exercise of reasonable diligence); *United States v. Todd*, 920 F.2d 399, 405 (6th Cir. 1990) (*Brady* does not require prosecution to produce written witness statements where defendant was aware of the essential facts that would enable him to interview those witnesses).

In *Triggs I*, the Colorado Court of Appeals acknowledged Applicant's argument that the prosecution's failure to disclose the notes was a due process violation [# 11-7, at 21-22], but did not specifically rule on the claim.  However, the state appellate court made factual findings relevant to a *Brady* claim in deciding whether the prosecution's failure to disclosure the

therapists' notes violated discovery rules and restricted his constitutional right to cross

examination.  The Colorado Court of Appeals determined:

> JT2 did not waive his privilege as to therapist 1 [Peter Strebe] . . . . Further, the prosecution turned over every therapist 1 document in his possession. . . . Because the documents [Applicant] sought were privileged, not within the prosecution's possession or control, and as accessible to the defense as they were to the prosecution, the prosecution had no duty under the Constitution or the discovery rules to retrieve them from treatment center 1.

[ECF No. 11-7, at 28-30].

As to the notes taken by Matt Disbrow (therapist 2), the state appellate court found the

following:

> We conclude that the prosecution produced, to the defense, all of therapist 2's notes within its possession or control.  Those notes that were not produced were in the sole possession of treatment center 2 and therapist 2 had no access to them. . . . [Applicant] was, or should have been, aware of DT's waiver, which was acknowledged at the motions hearing, and the defense therefore had four months prior to trial to subpoena the records of therapist 2 and treatment center 2.  We conclude that the prosecution cannot be faulted for [Applicant's] failure to use DT's waiver to obtain the notes in treatment center 2's possession.

[# 11-7, at 30-31].

And, finally, the Colorado Court of Appeals determined with respect to JT's therapists'

notes, that JT had not waived his physician-patient privilege, and, therefore, neither the

prosecution nor Applicant could compel production of the notes.  [*Id.*, at 31-21].

Because the state appellate court addressed and rejected some of Applicant's claims,

and acknowledged the allegations raised in claim 1(a), I presume that the state court rejected

the merits of claim 1(a).  *See Johnson*, 133 S.Ct. at 1091.  Applicant has not rebutted the

presumption.  Accordingly, I review the merits of claim 1(a) under the AEDPA deferential

standard of review.  *Id.*

The state appellate court's factual findings are presumed correct, are supported by the

applicable state court hearing and trial transcripts, and have not been rebutted by Applicant.

The evidence in the state court proceeding established that DT executed a waiver permitting

therapist Disbrow to testify about their therapy sessions, but there is no evidence that either JT

or JT2 executed a waiver, or otherwise waived his privilege, with regard to statements made to

therapists.  Moreover, the undisclosed therapist notes taken by Strebe and Disbrow were never

in the government's possession or control.  And, Applicant had the same access as the

government to the therapist's notes concerning DT, who had executed a waiver.  Accordingly, I

find that the Colorado Court of Appeals acted reasonably in rejecting Applicant's *Brady* claim.

Sub-claim 1(a) will be dismissed.

**B.  Claim 2**

In claim 2, Applicant contends that the trial court erroneously excluded a statement by a

doctor who examined KT that KT's hymen was still intact.  Applicant contends that the

statement would have disputed evidence that he sexually penetrated his daughter KT

repeatedly.  [# 1, at 43-44].

On direct appeal, Applicant argued that exclusion of the doctor's statement

violated his Sixth Amendment right to confrontation. [# 11-10, at 46].  The Colorado Court of

Appeals reviewed for plain error because Applicant did not argue "at trial" that the "constitutional

right to confrontation required admission of the physician's

statement."  [*Triggs I*, # 11-7, at 33].  Instead, Applicant contended at trial that the physician's

statement should have been admitted under Colorado evidentiary rules and as impeachment

evidence.  [*Id.*].  The state appellate court determined that Applicant was essentially arguing a

violation of his right to present a favorable defense based on the trial court's exclusion of the

doctor's findings.  [*Id.* at 34-35].  Reviewing this claim under the federal standard discussed in

*Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997), the Colorado Court of Appeals found:

> In this case, the caseworker testified that the doctor found no evidence
> conclusive of sexual abuse. This testimony had the same or similar impact as the
> doctor's statement that the victim had an intact hymen. Therefore, the statement
> would not have created reasonable doubt that did not otherwise exist. We
> perceive no error which was obvious and substantial, and which so undermined

> the fundamental fairness of the trial itself as to case serious doubt on the
> reliability of the judgment of
> conviction.

[*Id.* at 35-36].

A defendant's right to due process and compulsory process includes the right to present witnesses in his or her own defense. *Washington v. Texas*, 388 U.S. 14, 18-19, (1967).  In presenting such testimony, the defendant must comply with established rules of evidence and procedure as required by the state "to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).  However, the state may not arbitrarily deny a defendant the ability to present testimony that is "'relevant and material, and . . . vital to the defense.'" *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982) (quoting *Washington*, 388 U.S. at 16).

A defendant seeking to establish a violation of the right to compulsory process must show "that the evidence excluded by the trial court's ruling might have affected the trial's outcome; in other words, he must show that the evidence, if admitted, would have created reasonable doubt that did not exist without the evidence."  *Patton v. Mullin*, 425 F.3d 788, 797 (10th Cir. 2005) (citing *Valenzuela–Bernal*, 458 U.S. at 868).

I find that the Colorado Court of Appeals' determination comported with applicable Supreme Court law.  The evidence excluded by the trial court was not materially different from the testimony of two case workers, who were present at the exam of KT, that the physician found no conclusive evidence of sexual abuse.  (State Court R., 1/31/06 Trial Tr., at 216; 2/7/06 Trial Tr., at 245).  As such, admission of the doctor's statement "would not have created reasonable doubt where none existed before." *Davis v. Workman*, 695 F.3d 1060, 1081 (10th Cir. 2012) (addressing compulsory process claim, and citing *Richmond*, 122 F.3d at 871).  Accordingly, claim 2 will be dismissed.

**C.  Claim 4**

In claim 4, Applicant raises several allegations of ineffective assistance of trial counsel (IAC).  To prevail, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly deferential.  *Id.*  at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not just conceivable.  *Id.*  The Court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.  *Id.*  at 697.

### 1.  failure to raise a double jeopardy challenge

In claim 4(a), Applicant asserts that his trial counsel was constitutionally ineffective by failing to "produce a claim of double jeopardy." [# 1, at 40].  I concluded in a previous order that Applicant procedurally defaulted this claim. [# 27, at 16-17].  To excuse the procedural default, Applicant must show that the defaulted claims are "substantial" (meritorious).  *Martinez*, 132 S.Ct. at 1318.

The underlying basis for sub-claim 4(a) is contained in claim 10 of the federal Application.  In claim 10, which was dismissed as procedurally barred, Applicant maintained that his double jeopardy rights were violated when he was punished once when his parental rights were revoked, and then again with the criminal convictions and sentences.  [# 1, at 57-59].

The Double Jeopardy Clause of the Fifth Amendment protects a person from being "twice put in jeopardy of life or limb." U.S. Const. amend. V.  The prohibition against double jeopardy includes multiple prosecutions, and multiple punishments for the same offense that are not legislatively-authorized.  *Jones v. Thomas*, 491 U.S. 376, 381 (1989); *see also Wood v. Milyard*, 721 F.3d 1190, 1194 (10th Cir. 2013).  To be in jeopardy, a defendant must face "the risk that is traditionally associated with a criminal prosecution" and "then only when such occurs in successive proceedings."  *Hudson v. United States*, 522 U.S. 93, 99 (1997); *see also Breed v. Jones*, 421 U.S. 519, 528 (1975) (holding that double jeopardy does not apply unless the punishment is "essentially criminal" (emphasis added)).

"A civil remedy may constitute punishment for Double Jeopardy purposes where the remedy is so punitive we deem it criminal in nature."  *Smith v. Dinwiddie*, 510 F.3d 1180, 1187 (10th Cir. 2007) (citing *Hudson*, 522 U.S. at 99).  In *Dinwiddie*, the Tenth Circuit applied the relevant factors[3] and concluded that Oklahoma's statutory scheme authorizing the termination of parental rights was not criminal in nature because "the focus of neglect proceedings is to quickly resolve the placement of children, not to determine the ultimate guilt or responsibility of particular custodians," and "[t]he paramount consideration in proceedings concerning termination of parental rights shall be the health, safety or welfare and best interests of the child."  *Id.* at 1188 (internal statutory citations and quotation marks omitted).

---

[3]The Tenth Circuit recognized that the following factors should be considered in evaluating the nature of a civil sanction:

(1) [w]hether the sanction involves an affirmative disability or restraint;

(2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Hudson*, 522 U.S. at 99-100 (quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69 (1963)).

In Colorado, as in Oklahoma, the statutory scheme authorizing the termination of parental rights is civil in nature.  The relevant statutes provide that children should be removed from parental custody only when the child's welfare, safety, or the protection of the public would be endangered.  *See* § 19-1-102(1)(c), C.R.S.   Parental termination proceedings are within the exclusive jurisdiction of the statutory juvenile courts.  *See* §§ 19-1-104(1)(b), 104(4), C.R.S.; *see also People v. K.,* 596 P.2d 747, 751 (Colo. 1979) (recognizing that dependency and neglect proceedings are "civil in nature[,]" are not intended to punish the parent for conduct involving the child, and do not involve the state "against" the parent; rather, the state is in the position of *parens patriae* and the resolution turns on the child's best interest).  As such, I agree with Respondents' argument and find that the proceeding terminating Applicant's parental rights was not criminal in nature.  As such, his later criminal convictions based on the same conduct did not trigger double jeopardy protections.

Because there is no double jeopardy violation, counsel's failure to raise a double jeopardy challenge was not deficient performance.  *See, e.g., Spradling v. Addison*, No. 09-6195, 367 F. App'x 938, 941-42 (10th Cir. March 1, 2010) (unpublished) (rejecting ineffective assistance of counsel claim based on counsel's failure to raise a double jeopardy challenge where the petitioner's convictions did not violate double jeopardy); *see also Hooker v. Mullin*, 283 F.3d 1232, 1245 (10th Cir. 2002) (rejecting ineffective assistance of counsel claim where underlying basis of claim lacked merit).  Claim 4(a) lacks merit and will be dismissed as procedurally barred.

**2.  failure to seek recusal of the trial judge**

In claim 4(b), Applicant asserts an IAC claim based on counsel's failure to seek recusal of the trial judge for (i) judicial bias, and for (ii) failing to declare a mistrial based on improper comments made by the prosecution at the prosecution table or during bench conferences, and overheard by the jury.  [# 1, at 40, 50].  Applicant exhausted state remedies for sub-claim 4(b)(i).

17

[# 11, at 33].  The Court thus reviews the merits of that claim under the AEDPA standard of review. Applicant procedurally defaulted sub-claim 4(b)(ii).  [# 27, at 16-17].  He therefore must demonstrate, under *Martinez*, that his claim is substantial.

### a. sub-claim 4(b)(i)

Applicant maintains that trial counsel was ineffective in failing to seek recusal of the trial judge for judicial bias.

The Supreme Court has recognized that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S., at 583).  The Court went on to explain:

> In and of themselves (i.e., apart from surrounding comments or accompanying opinion), [judicial rulings] cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.

*Id.*  Moreover, even if a judge forms an opinion based on facts introduced or events occurring in the course of the proceeding, recusal is not required unless the judge "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

In *Triggs II*, the Colorado Court of Appeals applied the *Strickland* standard [# 11-3, at 5-6], and rejected the IAC claim on the following grounds:

> [Applicant] contends that the postconviction court erred in summarily denying his ineffective assistance claim against trial counsel for failing to file a motion to recuse the trial judge.  The trial court did not err in denying this claim.
>  . . .
> Here, in his motion, [Applicant] asserted that the trial court, in a pretrial order, indicated that the children were fearful of their parents "because of what was done to them," and that this statement indicates a bias against him.
>
> We note, as did the district court, that [Applicant] misquotes the court's order.  The order actually said:
>
>> [T]he children have demonstrated fear of their parents. . . . The Court understands that this factor could, in another context, be evidence of lack of trustworthiness of the statements.  The Court

does not believe that is so here.  The anger, as expressed, is because of what *they say* was done to them.

(Emphasis added.)

On appeal, Applicant acknowledges that he misquoted the trial court's order in his motion, but nevertheless, argues that the court's statements indicate that it believed the children, and thus was biased against him.  Because adverse rulings, without an indication of hostility or personal interest in the case which would render the trial unfair, are insufficient to seek recusal of the judge, [Applicant's] allegation is insufficient to establish that counsel's failure to seek recusal constituted deficient performance or prejudice. [State case law citation omitted].  Thus, the court did not err in summarily denying that claim. [*Id.*].

[# 11-3, at 6-8].

I find that the state appellate court's decision did not run afoul of *Strickland*.

The trial court's order referenced statements made by the children, but did not indicate

that the court believed the statements, or was otherwise biased against Applicant.  Indeed, the

trial judge expressly recognizes later in the same order that "[s]ome of the facts related [by the

child victims] are wild and implausible; . . . The Court finds it highly unlikely, if not impossible,

that these statements are true."  (State Court R., Court File, at 263-64].  Accordingly, defense

counsel's failure to seek recusal of the judge solely on the basis of the contents of the order did

not constitute deficient performance.  *See, e.g., Hatch v. Oklahoma*, 58 F.3d 1447, 1458 (10th

Cir. 1995) (absent evidence of judicial bias, counsel's failure to seek recusal of the trial judge

did not prejudice applicant at trial)*; Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998)

(absent evidence that recusal was warranted, applicant failed to show either deficient

performance or prejudice from absence of a recusal motion).  Sub-claim 4(b)(i) will be

dismissed.

### b.  sub-claim 4(b)(ii)

Applicant next asserts that counsel was ineffective in failing to request recusal of the trial

judge who did not *sua sponte* declare a mistrial when the prosecutor made improper comments

at the prosecution table or during bench conferences, which were over heard by the jury. [# 1, at 40, 50].

Applicant does not identify, in his state or federal pleadings, the alleged improper comments or statements overheard by the jury, or explain how he was prejudiced at trial. Conclusory allegations are insufficient to support a claim of ineffective assistance of counsel. *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 33-34 (10th Cir. 2007) (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (ineffective assistance claim fails "where [petitioner's] allegations are merely conclusory in nature and without supporting factual averments"). Moreover, I have carefully reviewed the state court trial transcripts and do not find any record support for Applicant's contention. Because the claim, as pleaded, lacks merit, the allegations do not excuse Applicant's procedural default. Sub-claim 4(b)(ii) will be dismissed as procedurally barred.

### 3. sub-claim 4(c)

Applicant raises an IAC claim based on counsel's failure to seek a mistrial when a juror notified the court and parties that the jury could hear a bench conference. [# 1, at 40]. Applicant procedurally defaulted sub-claim 4(c) [# 27, at 16-17]. He therefore must demonstrate under *Martinez*, that his claim is substantial.

Again, Applicant fails to describe the contents of the bench conference, or how he was prejudiced as a result of the jurors' overhearing the exchange between counsel and the court. *See e.g. United States v. Schoppert*, 362 F.3d 451, 459 (8th Cir. 2004) (recognizing that an allegation that the jury was tainted after overhearing a bench conference must be supported by a showing of prejudice). Further, there is no factual support in the state court record for his claim. Sub-claim 4(c) lacks merit and, therefore, will be dismissed as procedurally barred.

### 4. sub-claims 4(d) and 4(e)

In sub-claim 4(d), Applicant raises an IAC claim based on counsel's failure to notify the appropriate state and federal agencies of the trial judge's alleged bias. [# 1, at 41]. In sub-claim 4(e), Applicant raises an IAC claim based on counsel's failure to notify the American and Colorado Bar Associations of the prosecutor's misconduct. [*Id.*]. Applicant procedurally defaulted both sub-claims. [# 27, at 16-17]. He therefore must demonstrate under *Martinez*, that his claims are substantial.

Applicant's allegations fail to show that he was prejudiced at trial by any deficiencies in counsel's representation. As Respondents point out, an attorney's report of prosecutorial or judicial misconduct pursuant to Colorado Rules of Professional Conduct 8.3(a), (b), triggers a Colorado Supreme Court Attorney Regulation Committee investigation that is independent of a particular court proceeding. *See* Colo. R. Civ. P. 251.9 - 251.12. Thus, even if counsel had reported the alleged ethical violations at the time of trial, there is no reasonable probability that such reports would have impacted the jury's verdict.

Moreover, Applicant does not state any facts supporting a claim of judicial bias, other than the claim that was addressed in Section III.C.2.a., *supra*, and found to be without merit. In addition, I have rejected Applicant's allegations of prosecutorial misconduct, which form the basis of sub-claim 4(b)(ii), as conclusory. *See* Section III.C.2.b. And, with regard to Applicant's allegations of prosecutorial misconduct during closing argument, I concluded in a previous order that Applicant's claim is procedurally barred, and, therefore, not entitled to merits review. [# 27, at 19].

In short, I find that the allegations raised by Applicant are not substantial. Sub-claims 4(d) and 4(e) will be dismissed as procedurally barred.

### 5. sub-claim 4(f)

Applicant maintains that his counsel was ineffective in suggesting, in a post-conviction motion pursuant to Colo. Crim. P. Rule 35(b), that Applicant was willing to admit certain sexual

assaults, when Applicant has steadfastly maintained his innocence. [# 1, at 41].  Applicant

procedurally defaulted sub-claim 4(f).  [# 27, at 16-17].  He therefore must demonstrate under

*Martinez*, that his claim is substantial.

Applicant's claim is devoid of factual support. The Rule 35(b) motion does not imply

Applicant's willingness to admit to guilt. [# 16, at 42].  Instead, the reasons articulated by

counsel for reconsideration of Applicant's sentence included Applicant's completion of

education and training programs, good behavior, prison employment, family support and

obligations, and the possibility of beginning both substance abuse and sex offender treatment.

[*Id.*].  Moreover, although Applicant received a copy of the Rule 35(b) motion in August 2007 [*id.*

at 41], he does not state that he notified counsel of a disagreement with the substantive content.

Accordingly, I find that Applicant's allegation lacks merit and sub-claim 4(f) therefore will be

dismissed as procedurally barred.

### 7.  sub-claim 4(g)

Applicant contends that trial counsel was ineffective in failing to call "at least two crucial

defense witnesses." [# 1, at 41].  Applicant procedurally defaulted sub-claim 4(g).  [# 27, at 16-

17].  He therefore must demonstrate under *Martinez*, that his claim is substantial.

Applicant fails to identify the two witnesses counsel should have called, articulate their

proposed testimony, or discuss whether the witnesses were known prior to trial, and available to

testify.  Applicant's conclusory allegations are insufficient to support an IAC claim.  *See*

*Cummings*, 506 F.3d at 1228-29, 33-34;  *Fisher*, 38 F.3d at 1147.

Accordingly, sub-claim 4(g) will be dismissed as procedurally barred.

### D.  Claim 8

Applicant maintains that the trial court failed to ensure, via the verdict forms or

otherwise, that the verdicts were unanimous on the act supporting each conviction, in violation

of due process. [#1, at 49]. In his Opening Brief on direct appeal, Applicant argued the following:

> The testimony between the children was often inconsistent and contradictory. Because the jury also considered the children's hearsay statements, which provided far greater detail, it is unclear whether the convictions were based on hearsay allegations or trial testimony. The jury's finding with respect to KD [KT] is particularly concerning since KD [KT] never said in hearsay or a trial that Mr. Triggs abused her. The jury, therefore, had to base its convictions on the testimony of one of her brothers, and without the specificity requested by the defense, it is impossible to determine what conduct formed the basis for the convictions related to her.

> The jury's acquittal of Mr. Triggs on the counts related to DF [DT] shows that it disregarded many of the hearsay statements, because DF [DT] never accused Mr. Triggs of abuse. Based upon the number and variety of allegations, the time span at issue and the lack of specificity regarding when these incidents occurred in relation to one another, the evidence clearly presented a reasonable likelihood that the jurors could have disagreed upon which acts Mr. Triggs committed. If the court had required the jury to describe the act of sexual contact it unanimously agreed upon, then the verdicts would be devoid of ambiguity. . . .

[# 11-10, at 57-58].

The Supreme Court "has never held jury unanimity to be a requisite of due process of law" in state criminal trials. *Johnson v. Louisiana*, 406 U.S. 356, 359 (1972). In *Johnson*, the Court concluded that "the fact of three dissenting votes to acquit raises no question of constitutional substance about either the integrity or the accuracy of the majority verdict of guilt." *Id.* at 360. *See also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 130 S.Ct. 3020, 3035 n.14 (2010) (noting Court's holding in *Johnson* that "although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials.").

Furthermore, in returning a general verdict, the jury is not required to agree upon a single means of commission. *See Schad v. Arizona*, 501 U.S. 624, 631 (1991). "[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the

bottom line.  Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id.* at 631-32.[4]

*See also Richardson v. United States*, 526 U.S. 813, 817 (1999) ("a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime," citing *Schad*, 501 U.S. at 632–33).

The state court record reflects that at the close of the prosecution's case at trial, defense counsel asked the prosecution to elect the specific conduct relied on for each charge, objected to the general unanimity instruction, and requested that the jury be required to specify the sexual act on which it unanimously agreed on the verdict for because the evidence (direct testimony and hearsay of the child witnesses) was confusing and inconsistent. (State Court R., 2/7/06 Trial Tr., at 281-88; 2/9/06 Trial Tr., at 42-46).  The defense proposed forms of verdict requiring the jury to specify the conduct on which it was relying for conviction.  (*Id.* at 50-54).  The trial court declined to require election, ruling that a modified unanimity instruction was appropriate.  (*Id.*, 2/7/06 Trial Tr. at 288; 2/9/06 Trial Tr., at 53).

The trial court gave the following instruction to the jury:

> The evidence in this case has included allegations of a number of incidents of Sexual Assault on a Child or Sexual Exploitation of a Child. In order to find the defendant guilty of any charge as alleged in Counts I through XVII of the Information, the Jury must unanimously agree, as to that count, that the same act or acts occurred or unanimously agree that all the acts occurred.

(State Court R., Court File, at 193 (Jury Instr. No. 23)).

---

[4]The Supreme Court in *Schad* did recognize that there was a "point at which differences between means [of committing a crime] become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the [Due Process Clause] requires to be treated as separate offenses." *Schad*, 501 U.S. at 633.  However, I do not construe claim 8 to assert that the crimes of which Applicant was convicted rise to the level of the potential due process violation contemplated by *Schad*.  And, Applicant did not present the contours of such a due process claim to the state courts.

In *Triggs I,* the Colorado Court of Appeals found that Applicant was entitled to a unanimous jury verdict under state and federal constitutional law, citing, *inter alia, Cf. United States v. McElhiney*, 275 F.3d 928 (10th Cir. 2001).[5]   [# 11-7, at 41-42].   However, the state appellate court rejected Applicant's claim because there was no evidence to indicate that the jury had not followed the unanimity instruction.  Significantly, the state appellate court concluded:

> After a review of the record we conclude that there was a substantial amount of evidence for the jury to conclude beyond a reasonable doubt that [Applicant] had had sexual contact with the first child, despite her inability or unwillingness to acknowledge it.  As to the second child, he did not recall any sexual abuse by [Applicant], nor did any of the other children testify to such acts.  Therefore, the jury's verdict of not guilty pertaining to the second child is supported by the record.

> We also note that the prosecution's closing argument informed the jury that the unanimity instruction meant that regardless of the number of acts involving each child, "you all have to agree the same count [sic] happened, just one of them."  The prosecution continued that for "every child and every count," the jury had to "agree at least one thing unanimously happened or all of them happened."  Defendant's counsel emphasized the unanimity instruction in her closing argument.         Consequently, there is every reason to presume the jury followed the unanimity instruction.

[ECF No. 11-7, at 44-45].

I find that the Colorado Court of Appeals' resolution of Applicant's claim was not contrary to, or an unreasonable application of Supreme Court law.  In *Richardson*, the supreme Court reviewed the defendant's conviction under 21 U.S.C. § 848 (engaging in a continuing criminal enterprise).  At trial, the judge instructed the jury regarding the "series of violations" requirement that they "must unanimously agree that the defendant committed at least three federal narcotics offenses." However, the judge added, "[y]ou do not . . . have to agree as to the particular three or more federal narcotics offenses committed by the defendant."  *Richardson*, 526 U.S. at 816. The Supreme Court reversed the jury's verdict of conviction, holding that "unanimity in respect

---

[5] *McElhiney* recognized that the Sixth Amendment to United States Constitution requires a unanimous verdict in *federal* criminal trials. 275 F.3d at 935.

to each individual violation is necessary." *Id. Richardson* drew a distinction between the elements of an offense and the means by which the Government may satisfy an element. Although elements must be found unanimously by the jury, the jury need not agree unanimously on the means by which an element is proven. *Id.* at 817 ("[A] disagreement about means . . . would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element . . . "). The state appellate court's determination is consistent with *Richardson* because the jury determined that the prosecution had proved each element of the charged offenses beyond a reasonable doubt. The Constitution is not violated if the jurors did not agree unanimously on what facts constituted the element of sexual contact under

§ 18-3-405.3(1), (2)(a), C.R.S., (SAC PAT) or § 18-3-405(1), (2)(d), C.R.S. (SAC POT).

Moreover, the state appellate court's determination of Applicant's claim was reasonable in light of the evidence presented in the state court proceeding. There is nothing in the record to support a finding that the jury failed to reach a unanimous verdict for each count upon which the Applicant was convicted. Finally, as the state appellate court observed, there was sufficient evidence presented at trial to support the convictions with respect to victim KT.

Accordingly, claim 8 will be dismissed.

## F. Claim 12

In claim 12, Applicant asserts that the subsection of the sexual exploitation statute under which he was convicted, § 18-6-403(3), C.R.S., is unconstitutionally vague. [# 1, at 35].

Section 18-6-403(3)(d), C.R.S. (2005), provided that "[a] person commits sexual exploitation of a child if, for any purpose, he or she knowingly . . . [c]auses, induces, entices, or permits a child to engage in, or be used for, any explicit sexual conduct for the purpose of producing a performance." "Explicit sexual conduct" is defined as "sexual intercourse, erotic fondling, erotic nudity, masturbation, sadomasochism, or sexual excitement," and each of these

26

terms is further defined. § 18-6-403(2)(e), C.R.S. (2005); *see also* § 18-6-403(2)(c), (d), (f), (g), (h), and (i) (defining terms). The term "producing a performance" is not expressly defined.

Applicant contends that the statute is unconstitutionally vague because (1) the undefined terms "producing" and "performance" can be interpreted several ways; and, (2) the existence of several definitions of these terms invites speculation over whether inducing children to engage in sexual acts that only the actor sees once, live, and which the actor does not record in any medium, constitutes "producing a performance." [# 1, at 35; *see also* # 11-10, at 60-62].

In addressing Applicant's claim, the Colorado Court of Appeals identified the following controlling legal principles:

> A statute is impermissibly vague if its prohibitions are not clearly defined and persons of common intelligence must necessarily guess as to its meaning and differ as to its application. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also People v. Hickman*, 988 P.2d 628, 643 (Colo. 1999); *Rickstrew v. People*, 822 P.2d 505, 506-07 (Colo. 1991). Vague laws offend due process because they (1) fail to give fair notice of the conduct prohibited, and (2) do not supply adequate standards for those who apply them in order to prevent arbitrary and discriminatory enforcement. *People v. Baer*, 973 P.2d 1225, 1233 (Colo. 1999); *see* U.S. Const. amends. V, XIV; Colo. Const. art. II § 25. When a statute does not burden protected speech, as here, a court should sustain a facial challenge only where the "enactment is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495-96 (1982). If a statute survives a facial challenge, a litigant may succeed on a vagueness claim only by demonstrating that the statute is impermissibly vague as applied to him. *Board of Educ. v. Wilder*, 960 P.2d 695, 704 (Colo. 1998).

> However, "[a] law is unconstitutional only if it 'is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Id.* at 703 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

> We may sustain a facial vagueness challenge only "where the 'enactment is impermissibly vague in all of its applications.'" *Baer*, 973 P.2d at 1233 (quoting *Flipside*, 455 U.S. at 495-96). It is not enough that the law might be vague in a few hypothetical cases. *See People v. Gagnon*, 997 P.2d 1278, 1283 (Colo. App. 1999).

[# 11-7, at 47-49].

The state appellate court determined that the statute was not unconstitutionally vague based on the following reasoning:

> [Applicant] essentially argues that due to the multiple definitions of "produce" and "performance," the phrase "producing a performance" invites the jury to speculate what
>
> > a defendant must perform to bring about the consequences prohibited by the statute, including whether actual creation [of material] is required or whether simply providing a viewing opportunity is sufficient, whether an audience beyond the defendant is required and whether it must be public, and whether such performance is intended to benefit the defendant, the audience or both.
>
> The rules of statutory construction reveal the phrase's meaning and we conclude that it is not unconstitutionally vague.  First, other subsections of section 18-6-403 focus on prohibiting the production and possession of exploitative material.  Although subsections 18-6-403(1) and (1.5), C.R.S. 2009, provide the legislature's intentions in drafting the statute – eliminating sexual exploitation of children . . .– subsections 18-6-403(3)(a)-(c), C.R.S. (2009), respectively, criminalize the making, publishing, or distributing, and possession of any sexually exploitative material.  Because it is presumed that the entire statute is intended to be effective, subsection 18-6-403(3)(d) must be intended to punish the use of children in sexually explicit conduct, even if no recording is made.  *See* § 2-4-201(1)(b), C.R.S. (2009); *Cacioppo v. Eagle County Sch. Dist. Re-50J,* 92 P.3d 453, 463 (Colo. 2004).
>
> In addition, in construing a statute our duty is to ascertain the intent of the General Assembly in passing it.  *See M.S. v. People*, 812 P.2d 632, 635 (Colo. 1991).  The introductory subsections express the legislature's finding that children are harmed by both (1) each viewing of their sexually explicit conduct in exploitative material; and (2) engaging in the sexually explicit conduct depicted therein.  *See Gagnon*, 997 P.2d at 1282.  Though the first three subsections are directed at the first harm, subsection 18-6-403(3)(d) is directed at the latter harm and, therefore, this also indicates the legislature was not concerned with the manufacturing of material under this provisions, but instead with merely providing a viewing opportunity.

[# 11-7, at 49-51].

The Colorado Court of Appeals next rejected Applicant's assertion that the statute is vague because it is uncertain as to how many people must view the production, agreeing with the Tenth Circuit's determination, in *United States v. Riccardi*, 405 F.3d 852, 872 (10th Cir.

2005), that "'performances' need not be recorded, and they can be to an audience of one." [*Id.*

at 51-52].

> Finally, the state appellate court disagreed with Applicant's contention that

> the statute fails to prevent arbitrary and discriminatory enforcement of the law because, under the statute, any person who perpetrates a sexual assault on a child involving explicit sexual conduct could be charged with exploitation because the adult perpetrator in every instance causes the child to engage in such conduct and any action by the perpetrator to bring about the conduct could be producing a performance for his own benefit.  We disagree with this assessment because in this situation there would be no audience and, consequently it would only be a sexual assault and not sexual exploitation.

> Therefore, both the structure and the express purpose of section 18-6-403 require the conclusion that a parent forcing a child to engage in sexually explicit conduct while he watches is covered by subsection 18-6-403(3)(d). Further, a person of common intelligence can and would understand that making and watching children engage in sexual activities with each other is "producing a performance."

[# 11-7, at 52].

I find that it was not unreasonable for the Colorado Court of Appeals to reject Applicant's

vagueness challenge to Colorado's statute criminalizing the sexual exploitation of a child.

"In evaluating the facial constitutionality of a state statute, a federal court is bound by the

constructions placed on that statute by state court decisions." *Ferguson v. Estelle*, 718 F.2d

730, 733 n. 5 (5th Cir.1983) (citing *New York v. Ferber*, 458 U.S. 747 (1982)). *See also Missouri*

*v. Hunter,* 459 U.S. 359, 368–69 (1983) (a federal court is bound by the state court's

interpretation of a state criminal statute; *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (state

court's interpretation of state law is binding on the federal court).   Accordingly, I defer to the

Colorado Court of Appeals' construction that a parent forcing a child to engage in sexually

explicit conduct while the parent watches is covered by § 18-6-403(3)(d), C.R.S., and that

providing a viewing opportunity is sufficient to satisfy the element of "producing a performance."

I further find that the state appellate court reasonably determined that the statute adequately

defines the criminal conduct such that a person of ordinary intelligence would understand that

making and watching children engage in sexual activities with each other constitutes "producing a performance." *See Grayned*, 408 U.S. at 112 (upholding an ordinance that clearly "delineates its reach in words of common understanding" and contained "no broad invitation to subjective or discriminatory enforcement"); *see also Dennis v. Poppel*, 222 F.3d 1245, 1259-61 (10th Cir. 2000) (statute's equating "cocaine base" with "rock" or "crack" cocaine permitted person of ordinary intelligence to distinguish crimes involving each; also noting that a vagueness challenge requires more than an assertion that the legislature "should have chosen clearer and more precise language.").

Moreover, the Colorado Court of Appeals reasonably rejected Applicant's argument that §18-6-403(3)(d) could be arbitrarily enforced because an actor who sexually assaults a child (with no one watching) can produce a performance. "[V]agueness challenges to statutes which do not involve First Amendment rights are limited to the facts of the case at hand." *Dennis*, 222 F.3d at 1260 (citing, *e.g.*, *United States v. Mazurie*, 419 U.S. 544, 550 (1975)). *See also United States v. Williams*, 553 U.S. 285, 304 (2008) (aside from First Amendment challenges, "ordinarily a [person] who engaged in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others). In Applicant's case, the evidence demonstrated that he forced his children to engage in sexually explicit conduct while he watched. And, even if Applicant is correct that the same conduct is proscribed by two separate statutes addressing sexual exploitation of a child and sexual assault on a child, that does not render either statute void for vagueness. *See United States v. Batchelder*, 442 U.S. 114, 123 (1979) (the vagueness inquiry focuses on whether the challenged statute provides adequate notice of the proscribed conduct, regardless of whether the conduct is also prohibited by another criminal statute).

Accordingly, claim 12 will be dismissed.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C.

§ 2254 [# 1], filed December 5, 2013, by Applicant, James Sidney Triggs, is DENIED;

2. That this case is DISMISSED WITH PREJUDICE;

3. That there is no basis on which to issue a certificate of appealability pursuant to 28

U.S.C. § 2253(c);

4. That leave to proceed *in forma pauperis* on appeal is denied; however, Applicant may

file a motion in the United States Court of Appeals for the Tenth Circuit; and

5. That all pending motions are DENIED as moot.

Dated at Denver, Colorado on May 19, 2014.

BY THE COURT:

Robert E. Blackburn
United States District Judge